The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 7 |
| JASON M. MCPHAIL & | ) |
| | ) CASE NO. 10-61090 |
| HEATHER D. MCPHAIL, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| | ) |

On April 8, 2010, the United States Trustee ("UST") filed a motion to dismiss this case for abuse. An evidentiary hearing on the motion was held on July 13, 2010. Melissa Joan Acayan represented debtors Jason M. McPhail and Heather D. McPhail ("debtors"), and Dean P. Wyman represented the UST. The UST's motion is now before the Court.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## LEGAL BACKGROUND

Section 707(b)(1) and (3) provide in pertinent part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter . . . .
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter . . . the court shall consider . . . [whether] the totality of the circumstances of the debtor's financial situation demonstrates abuse.

Section 707(b) was amended by the passage of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"). Prior to 2005, section 707(b) required a showing of "substantial" abuse before a case could be dismissed or converted and established a presumption "in favor of granting the relief requested by the debtor." Both the requirement that abuse be "substantial" and the presumption that relief be granted were eliminated by BAPCPA. In re Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). BAPCPA also created the "means test" of section 707(b)(2), which creates a presumption of abuse for above median income debtors. Id. at 865.

In determining whether a debtor's case should be dismissed under section 707(b)(1) and (3), bankruptcy courts in this district have applied the factors used by the Sixth Circuit Court of Appeals in pre-BAPCPA cases. E.g., In re Srikantia, 417 B.R. 505, 508–509 (Bankr. N.D. Ohio 2009) ("[P]re-BAPCPA decisions provide sound guidance and are instructive in evaluating motions to dismiss."); Mestemaker, 359 B.R. at 856; In re Simmons, 357 B.R. 480, 489 (Bankr. N.D. Ohio 2006). However, while the basic character of the analysis is unchanged, courts have recognized that the 2005 amendments have lowered the United States Trustee's burden. Mestemaker, 359 B.R. at 856 ("The court emphasizes, however, that Congress has clearly lowered the standard for dismissal in changing the test from 'substantial abuse' to 'abuse.'").

A determination that abuse has occured can be predicated on either a lack of honesty or a lack of need. In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989)). In determining whether a debtor is honest, courts should determine if the debtor is "merely seeking an advantage over his creditors, or instead is 'honest' in the sense that his dealings with creditors have been marked by essentially honorable and undeceptive dealings." In re Behlke, 358 F.3d 429, 434 (6th Cir. 2004). Factors to be considered in

2

determining whether a debtor is honest include the debtor's good faith and candor in filling out schedules and other documents, whether the debtor has engaged in "eve of bankruptcy" purchases, and whether the debtor was forced into chapter 7 by unforeseen or catastrophic events. Krohn, 886 F.3d at 126.

The primary factor in deciding whether a debtor is needy is whether the debtor can repay his debts out of his future earnings. Krohn, 886 F.2d at 126–127 ("That factor alone may be sufficient to warrant dismissal.") Courts have dismissed the cases of debtors who can make substantial payment to their general unsecured creditors in a chapter 13 plan. Behlke, 358 F.3d at 437 (pre-BAPCPA opinion dismissing case where debtor could pay 14% dividend to general unsecured creditors over 36 month plan); Mestemaker, 359 B.R. at 857 (dismissing case where debtors could pay 10% to 15% dividend to general unsecured creditors). Other factors the court may consider include whether the debtor enjoys a stable source of income, whether the debtor's expenses can be reduced, and whether the debtor's financial situation is the result of an unforeseen catastrophic event. Krohn, 886 F.2d at 126–128.

## FACTUAL BACKGROUND

Debtors filed a chapter 7 bankruptcy petition on March 3, 2010. According to amended Schedule I, Mr. McPhail is a fitter at B & W Nuclear Operations Group, and Mrs. McPhail is a supervisor at Nationwide Insurance. Although Mr. McPhail was temporarily laid off in July of 2008 and some layoffs have occurred at Mrs. McPhail's company, the debtors currently enjoy steady employment. According to amended Schedule I, the debtors' combined annual gross income is $96,030 per year.

This is the debtors' second chapter 7 bankruptcy in the last ten years. Their first bankruptcy was filed on April 23, 2001 and discharged on August 24, 2001. Following their discharge, the debtors began acquiring new unsecured debt. Mrs. McPhail testified that between 2001 and 2008, they accumulated approximately $16,000 in unsecured debt per year. She testified that they were "living beyond their means" during that time period and "robbing Peter to pay Paul." They were able to make minimum payments on their debt until early 2008, when Mr. McPhail's overtime hours were cut. Things got worse in July of 2008 when Mr. McPhail was temporarily laid off from his job.

By the time they filed their second bankruptcy petition, the debtors had acquired $112,364 in new, unsecured debt. Schedule F lists no less than 27 credit cards, including cards from Gap, Lowe's, Wal Mart, Home Depot, Macy's, Old Navy, and Kohl's. Schedule F also lists no less than 8 payday loans from lenders including Advance America, Cashland Financial Services, Cashnet USA, Check N' Go, Check Into Cash, and Payday One.

Mrs. McPhail testified that the debtors became serious about managing their

3

financial lives and stopped using credit cards in mid-2008. However, Schedule F does not indicate the date on which any of the debtors' unsecured obligations were incurred. Furthermore, Mrs. McPhail's testimony was equivocal about whether the debtors could adhere to a budget. At one point, she testified that they needed to make a budget and stick to it. At another point, she testified that it was impossible for the debtors to set a budget as part of a Chapter 13 plan or otherwise. She testified that dealing with her finances was a "juggling act" and that being forced to adhere to a budget would make her finances "even more of a juggling act."

Mr. McPhail testified that he is completely ignorant about his finances and the bankruptcy process in general. At various points in his testimony, he testified that he did not know his income, did not know what his bills are, did not know what his vehicle was worth or what he owed on it, did not know the cost or probable duration of his child's tutoring, did not understand Chapter 7 or Chapter 13 bankruptcy, did not know whether he intended to reaffirm on various debts and did not recognize various bankruptcy forms despite signing them under penalty of perjury.

Chapter 13 trustee Toby L. Rosen ("trustee") testified at the hearing. In her opinion, amended Schedule J, which shows projected disposable income of negative $966, includes excessive expenses. She identified several ways in which the debtors would be forced to reduce their budget if they converted their case to a Chapter 13. First, Schedule C indicates that the debtors owe the IRS $2,600. Amended Schedule J indicates that the debtors intend to pay $230 per month toward the arrearage. The trustee testified that, if the debtors converted their case to a Chapter 13, payment of the arrearage could be spread out over time through the plan.

Second, Schedule D indicates that the debtors have granted HSBC first and second mortgages on their property located at 5453 Willa St., Louisville, OH 44641 ("property") in the amounts of $174,393 and $39,146, respectively. Schedule D lists the value of the property at $147,000. According to amended Schedule J, the second mortgage payment is $451 per month. The trustee testified that, if the debtors converted their case to a chapter 13, she would object to any plan that did not strip the second mortgage as completely unsecured.

Third, Schedule D shows that the debtors make payments on three vehicles: a 2001 Ford F-150; a 2003 Buick Rendevous and a 2005 Harley Davidson. Mrs. McPhail testified that she drives the Rendevous. Mr. McPhail testified that the F-150 is his primary vehicle but that he drives the motorcycle whenever possible to save on gas. The trustee testified that, if the debtors converted their case to a Chapter 13, she would object to the debtors retaining the motorcycle as bad faith. Fourth, the trustee testified that in a chapter 13 plan the interest rates on the other two vehicles could be reduced and the amount owing could be crammed down to approximately $3,000.

4

Fifth, Schedule F indicates a student loan in the amount of $12,420, and the debtors list student loan payments in the amount of $130 per month on amended Schedule J. The trustee testified that, if the debtors converted their plan to a Chapter 13, she would object to the $130 payment as discriminating against other unsecured creditors. Sixth, amended Schedule J indicates that the debtors spend $60 per month for internet and ground line phones and $140 for cell phones. The trustee indicated that she would object to these amounts as excessive.

In addition, the trustee testified that she would require proof of several budget items that increased between the filing of the petition and the filing of amended Schedule J. Amended Schedule J indicates that debtors' medical expenses increased from $50 to $295 because Mrs. McPhail had been diagnosed with pre-cervical cancer. Amended Schedule J also shows that transportation expenses increased from $350 to $500. Finally, amended Schedules J includes $328 per month for speech therapy for their youngest son, which commenced after the filing of their petition.

## ANALYSIS

The Court concludes that the this case must be dismissed on converted to a Chapter 13 because the debtors are neither honest nor needy as those terms are used in bankruptcy law.

*A. Lack of Honesty*

The Court finds that the debtors' course of conduct leading up to their bankruptcy demonstrates dishonesty as that term is used in bankruptcy law. "Dishonest" debtors are debtors who either take out debt with no intention to repay it or with reckless disregard for whether repayment is possible. In other words, a dishonest debtor is a person who is trying to take advantage of his creditors. In re Behlke, 358 F.3d 429, 434 (6th Cir. 2004). This does not denote congruently with everyday usage of the term "dishonest."

This is the debtors' second bankruptcy. As such, they knew the consequences of irresponsible financial management. Nevertheless, they used no less than 27 credit cards and accumulated over $100,000 in unsecured debt to live, in Mrs. McPhail's own words, "beyond their means." Given the debtors' previous history, they either knew or should have known that repayment would be impossible and that they would be back in bankruptcy. As such, they were attempting to take advantage of their creditors and were dishonest as that term is used in bankruptcy law.

Debtor's counsel pointed out that the debtors faced difficult circumstances pre-petition. More specifically, the debtors contend that Mr. McPhail's unexpected job loss contributed to the filing of the bankruptcy. However, by the time Mr. McPhail lost his

job, the debtors were already in over their heads. Mr. McPhail's job loss only advanced the date of the inevitable reckoning. As such, the Court does not find Mr. McPhail's job loss to be probative of debtors' honesty.

In addition, debtors' counsel put a great deal of effort into demonstrating that the debtors have faced difficult circumstances post-petition. Specifically, debtors' counsel discussed Mrs. McPhail's health and her child's speech therapy. *These circumstances are not relevant to the debtors' pre-petition honesty.* Put another way, whether the debtors are sympathetic has no bearing on whether they were fair to their creditors. Post-petition circumstances are only relevant to the debtors' ability to fund a hypothetical Chapter 13 plan under the "neediness" prong of the Behlke analysis.

Finally, the debtors contend that because of Mr. McPhail's job loss they stopped using credit cards in July of 2008. In essence, they argue that even if they were dishonest until July of 2008, they have been honest for the last two years. The Court finds that the debtors are judicially estopped from asserting that they ceased using credit cards in July of 2008 because they made *no* effort on any of the eleven pages of creditors comprising Schedule F to indicate the dates on which they incurred their unsecured debts.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of the doctrine is to preserve the integrity of the judicial system. Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). Put more colorfully, the doctrine prevents litigants from engaging in "the perversion of the judicial machinery" by "blowing hot and cold as the occasion demands" or "having one's cake and eating it too." Id. at 775. (citing Reynolds v. Comm'r, 861 F.2d 469, 474 (6th Cir. 1988)).

To apply judicial estoppel, the Court must make three findings: first, that the party assumed a position contrary to a position taken under oath in another phase of the proceeding; second, that the Court adopted the party's original position as a preliminary matter or as part of a final disposition; and, third, that the party did not adopt the inconsistent positions as the result of mistake or inadvertence. White v. Wyndham Vacation Ownership, Inc., 2010 WL 3155161, *4 (6th Cir. August 11, 2010) (reporter citation not yet available).

In this case, the first prong is met. The debtors' omission of the dates on which their unsecured debts were incurred is equivalent to an affirmative statement that they do not know when the debts were incurred. *See* id. at *5 (finding that a debtor's failure to list a sexual harassment claim on her bankruptcy schedules was equivalent to a statement under oath that the claim did not exist). This representation is contrary to Mrs. McPhail's testimony that the debtors stopped using credit cards in July of 2008.

6

The second prong is also met. After the debtors' petition was filed, the Court checked to make sure the various schedules of the petition were filed, verified that the debtors filed a certificate of credit counseling, and collected a filing fee. After performing these functions, the Court accepted the debtors' petition as a preliminary matter. *See* id. (discussing preliminary acceptance of a debtor's petition in a Chapter 13).

Finally, the third prong is met. Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are (1) where a debtor lacks knowledge of the factual basis of the undisclosed information, and (2) where the debtor has no motive for concealment. Id. at *5. In this case, the debtors clearly had some knowledge of the date on which their debts were incurred because they testified they were incurred before July of 2008. The debtors also had a motive to conceal the dates on which their debts were incurred. Under 11 U.S.C. § 523, the date on which a debt is incurred may have an impact on whether or not it can be discharged in bankruptcy. Thus, the debtors are judicially estopped from arguing that they ceased using credit cards in July of 2008.[1]

*B. Lack of Need*

Although the debtors' lack of honesty is a sufficient basis for dismissal, the Court also believes that the debtors can pay off some portion of their debts through a Chapter 13 plan. The trustee identified six items that the debtors would be forced to reduce or eliminate from their budget. First, the debtors would be required to avoid their second mortgage, which would save $451 per month. *See* In re Lane, 280 F.3d 663, 668–69 (6th Cir. 2002) (holding that a totally unsecured mortgage can be stripped); In re Gilmore, 2010 WL 2342441, *6 (Bankr. N. Dist. Ohio 2010) (finding it bad faith not to strip a completely unsecured mortgage). Second, the debtors would be required to pay their student loans with the rest of their unsecured creditors, which would save $130 per month. *See* 11 U.S.C. § 1322(b)(1) (stating that a plan may not discriminate unfairly against a class of unsecured creditor).

Third, the Court would sustain the trustee's objection to the debtors' cell phone bill at least to some meaningful extent. *See* Gilmore 2010 WL at *6 (disallowing an expense for cell phones when the debtors had a ground line and did not have a special need for cell phones). Fourth, the Court would sustain the trustee's objection to the debtors keeping the motorcycle, which would save $150 per month. *See* In re Urbanek, Case No. 08-64127, Docket No. 48, *3 (finding bad faith where Chapter 13 plan proposed that debtors made secured payments on a luxury item). Fifth, the debtors could spread out their arrearage payments to the IRS. Sixth, the debtors could reduce

---

[1] Even in the absence of judicial estoppel, the debtors have presented no documentary evidence as to when their debts were incurred, which makes it impossible to evaluate the truthfulness of their testimony.

7

their payments on their cars by stripping down the interest rates and possibly the loan balances. In total, the debtors could reduce their budget substantially and make some meaningful repayment to their creditors.

The debtors testified that they were likely to incur significant medical bills because of Mrs. McPhail's health condition. However, these expenses are speculative and unproven. If Mrs. McPhail's health worsens in the future or other medical issues change, the issue can be revisited then. Such concerns are never immutably fixed in Chapter 13 context.

The UST's motion is granted.

An order will issue with this opinion.

#  #  #

Service List:

Jason M. McPhail
5453 Willa St
Louisville, OH 44641

Heather D. McPhail
5453 Willa St
Louisville, OH 44641

Michael V Demczyk
Canton
PO Box 867
12370 Cleveland Ave NW
Uniontown, OH 44685

United States Trustee
H.M. Metzenbaum U.S. Courthouse
201 Superior Ave.
#441
Cleveland, OH 44114

Melissa Joan Acayan
Rauser & Associates
401 W. Tuscarawas Street, NW
Suite #400
Canton, OH 44702

Dean Wyman ust03
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, Oh 44114-1240